## Potter's Estate.

*Statute of limitations—Character of acknowledgment or promise.*

In order to toll the statute of limitations an acknowledgment or promise must be complete; it must embody everything which the law has made essential to the purpose. Disconnected statements each falling short in some particular cannot be pieced together to make up a sufficient promise.

*Promissory notes—Alterations—Decedents' estates—Statutes of limitations.*

Where a note presented to an administrator nearly twenty years after its date shows upon its face that a seal had been affixed and other changes made, and a witness who could only have been four or five years old at the time he stated the changes were made testifies that the changes were made at the instance of the decedent, and before the note was barred by the statute, the court commits no error in holding that the changes had not been satisfactorily accounted for.

Argued Jan. 22, 1901. Appeal, No. 9, Jan. T., 1901, by F. C. Stone, from decree of O. C. Susquehanna Co., Jan. T., 1899, No. 26, dismissing exceptions to auditor's report, in estate of Nelson Potter, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to auditor's report.
The facts appear by the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*T. J. Davies*, for appellant.

*A. B. Smith*, of *McCollum & Smith*, for appellees.

OPINION BY SMITH, J., March 19, 1901:

The assignments of error raise the question whether the appellant is entitled to payment of certain claims presented by him against the estate of his father-in-law, Nelson Potter, which were disallowed by the court below. They consist of (1) a bill for services rendered and various farm products furnished by the appellant to the decedent, from 1881 to 1896, amounting to $576.75, of which the court allowed only $155; (2) expenses

incurred by the appellant, amounting to $200, in a criminal proceeding in which he became involved while acting for the decedent; (3) a note, dated May 18, 1878, for $220.20, at thirty days, given by the decedent to the appellant.

The first claim was barred in part by the statute of limitations, and failed in part through lack of proof. The evidence offered to take it out of the statute consisted of acknowledgments, promises and references to it, more or less definite, by the decedent. No one of them, however, has all the requisites necessary to toll the statute. To accomplish this end, an acknowledgment or a promise must be complete: it must embody everything which the law has made essential to the purpose. Disconnected statements, each falling short in some particular, cannot be pieced together to make up a sufficient promise. An acknowledgment or a promise consisting only of shreds and patches is wholly inadequate. As to that part of the claim not within the statute, it is apparent from an examination of the evidence that if the court below erred in its adjudication it was on the side of liberality to the appellant.

The second claim grew out of a sale, by the appellant, for Potter, of some butter made by the latter. Upon the allegation that this was adulterated with oleomargarine, the appellant was indicted and convicted under the act of 1895. A new trial, however, was granted, and a nolle prosequi entered. There is evidence that Potter agreed to pay the expenses incurred by the appellant in this case. The claim was resisted on the ground that this promise was without consideration. The absence of a consideration, indeed, is sufficiently obvious. There was no advantage to the promisor, no inconvenience to the promisee, and no moral obligation, to serve as a consideration. This claim, therefore, cannot be sustained.

The claim on the note was contested on the ground (1) that it was barred by the statute of limitations, and (2) that the note showed material alterations which were not accounted for. The note, filled out on a printed form, was originally without seal. When offered in evidence, the word "seal," inclosed in a scroll, was written above the space between the words of the signature, "Nelson" and "Potter;" the written portion, except the first figure "2" of the "$220" at the upper left hand corner, and the words "Two hundred and" in the body, had

been retraced, in a darker ink than that originally used; from lack of room between the words "Hundred" and "Twenty," the word "and" was written above the space between them: it had also been written, and then erased, above the space between the words "Twenty" and "Dollars;" and the words not retraced were written with darker ink than that in which the others were originally written. Indorsed on the note was a payment of $5.00, under date of April 16, 1895; and in this the figure "5," in the year, is written over an "8." The decedent died May 10, 1897.

To explain the condition of the note, one witness, a son of the appellant, testified that "at least three years and it might have been four" before the payment of $5.00 was indorsed on it, the appellant asked Potter to renew it, with the interest added, telling him "that the note would soon be outlawed;" that Potter declined to renew it, but "said that he would make a sealed note of it, or fix it so that it would not outlaw;" that the appellant's wife, by Potter's direction, thereupon made the seal on the note; that on her saying that "it didn't look much like the other, as the other was so old and dim," Potter "told her that she could rewrite the old note, or retrace it, so that it would all look alike," and that she did so. All this, if it happened as related, must have taken place within six years after the note matured, which was June 18, 1884. The witness, who was twenty years old when he testified, was then not more than five years old. If it happened in 1891 or 1892, as his testimony respecting the date would indicate, he was a boy of twelve or thirteen; but as that was seven or eight years after the claim had been barred by the statute of limitations, the parties could hardly have spoken of it and treated it as one that "would soon be outlawed."

The appearance of the note indicates that it was originally drawn for $20.00; that the written portion, as thus drawn, was retraced; and that the amount was changed to $220, by placing the figure "2" before the "20" in the upper left-hand corner, and the words "Two Hundred" before the word "Twenty," with the word "and" above the space between them. There is no indication that this figure and these words were first written in paler ink, or had faded, and were subsequently retraced in darker ink. If the words "Two Hundred

576, (1901).]                    Opinion of the Court.

and Twenty" were written at the same time, there was nothing to prevent the word "and" from being written in its proper place on the line. As they are written, though they commence at the beginning of the line, they exhaust the space before the word "Twenty" without including the word "and." In brief, they present an appearance such as they would naturally exhibit if added to a note drawn for $20.00, with the word "Twenty" retraced. These are alterations apparent on the note, which it was the appellant's duty to account for. We have carefully examined the evidence, and are of opinion that it falls short of presenting a satisfactory explanation of these alterations. The appellant, therefore, has failed to establish his right to recover on the note.

The decree of the court below is affirmed.